IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PEGGI S. M., | CV 19-19-BU-BMM-KLD |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner" or "Defendant") on her applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., 1381 et seq. (Doc. 2.) On July 19, 2019, Defendant filed the Administrative Record. (Doc. 6.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of Defendant's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings. (Doc. 10.) The motion is fully briefed and ripe for the Court's review. (Docs. 10, 12, 14.)

For the reasons set forth herein, and after careful consideration of the record

1

and the applicable law, the Court recommends that the Commissioner's decision

should be **AFFIRMED**.

## I.    Procedural Background

Plaintiff protectively filed applications for Title II disability insurance

benefits and Title XVI supplemental security income in December 2015, alleging

disability since September 23, 2015. (Doc. 6, at 74-75). Plaintiff later amended her

onset date to December 29, 2015. (Doc. 6, at 42.)

Plaintiff's claim was denied initially and on reconsideration, and by an ALJ

after an administrative hearing. (Doc. 6, at 12-30 & 161-64). Plaintiff requested

review of the decision, and on May 2, 2018, the Appeals Council denied Plaintiff's

request for review. (Doc. 6, at 6-10.) Thereafter, Plaintiff filed the instant action.

## II.    Legal Standards

### A.    Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity,

allowing for judicial review of social security benefit determinations after a final

decision of the Commissioner made after a hearing. *See Treichler v. Commissioner*

*of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside

the Commissioner's decision "only if it is not supported by substantial evidence or

is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.    Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§

3

423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

The Commissioner assesses disability through a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d at 679.

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments

4

meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still perform on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in

the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   Discussion

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. The ALJ further found that Plaintiff had not engaged in substantial gainful activity after the original alleged onset date of December 29, 2015.

At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia, degenerative disc disease, attention deficit disorder/attention deficit hyperactivity disorder, affective disorder, and anxiety disorder. (Doc. 6, at 18.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 6, at 19.)

At step four, the ALJ found that Plaintiff had the residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) [;] the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. Additionally, she can sit and stand/walk each for 6 hours in an 8-hour workday with normal rest breaks. She can occasionally climb ramps/stairs,

balance, stoop, bend, squat, kneel, and crouch, but she can never crawl or climb ladders, ropes and scaffolds. In addition, she is restricted to occasional use of her bilateral upper extremities for overhead reaching. The claimant cannot be exposed to heavy vibrations or to hazards. The claimant is able to perform basic mental demands of competitive, remunerative, unskilled work, including the ability to understand, carry out and remember simple instructions, and to deal with the changes in a routine work setting. She can perform [sic] that involves only superficial interaction with the general public.

(Doc. 6, at 20.)

Based on this residual functional capacity, the ALJ found that Plaintiff could not perform her past relevant work as a cake decorator, stock clerk, or animal caretaker. (Doc. 6, at 28.) Proceeding to step five, the ALJ found based on the vocational expert's testimony that there were other jobs existing in significant numbers in the national economy that Plaintiff could have performed. (Doc. 6, at 28.) Thus, the ALJ found that Plaintiff was not disabled. (Doc. 6, at 29.)

Plaintiff argues the ALJ erred in the following ways: (1) improperly discounting the medical opinion evidence by Dr. Iuliano; (2) failing to properly credit her testimony; and (3) failing to incorporate all of her impairments into the vocational consultant's hypothetical questioning. (Doc. 10.) The Court addresses each argument in turn.

/ / /

/ / /

7

## A.    Medical Opinion Evidence

The administrative record contains several medical opinions and records that are relevant to Plaintiff's physical and mental functioning during her alleged period of disability. Plaintiff does not challenge the ALJ's evaluation of each medical source opinion. Instead, she argues the ALJ erred in evaluating Dr. Iuliano's medical source opinion that is relevant to her physical functioning after undergoing lumbar fusion surgery. The Commissioner counters that the ALJ reasonably evaluated Dr. Iuliano's opinion.

When evaluating a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is entitled to the greatest weight. *Lester*, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician." *Lester*, 81 F.3d at 830.

Where there are conflicting medical opinions in the record, the ALJ is responsible for resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). If a treating physician's opinion is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence" in the record, it is entitled to controlling

weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir 2007). If a treating physician's

opinion is not entitled to controlling weight, the ALJ considers several factors in

determining what weight it will be given. *Orn*, 495 F.3d at 631. Those factors

include the "[l]ength of the treatment relationship and the frequency of the

examination" and the "[n]ature and extent of the treatment relationship." *Orn*, 495

F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)). Additional factors relevant

to the ALJ's evaluation of any medical opinion, not limited to that of a treating

physician, include: (1) the supportability of the opinion; (2) the consistency of the

opinion with the record as a whole; (3) the specialization of the treating or

examining source; and (4) any other factors that are brought to the ALJ's attention

that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

To discount the uncontroverted opinion of a treating or examining physician,

the ALJ must provide clear and convincing reasons for doing so and those reasons

must be supported by substantial evidence. *Lester,* 81 F.3d at 830. To discount the

controverted opinion of a treating or examining physician, the ALJ must provide

specific and legitimate reasons supported by substantial evidence in the record.

*Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed

and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

As set forth below, the administrative record in this case contains conflicting opinions from treating and non-examining sources regarding Plaintiff's functioning during the relevant period. Given these conflicting opinions, the ALJ was required to give specific and legitimate reasons for discrediting one opinion in favor of another.

        1.      <u>Brian Iuliano, M.D.</u>

Plaintiff argues the ALJ failed to accord appropriate weight to Dr. Iuliano's opinion that Plaintiff was unable to work due to her broken back and lumbar fusion surgery. (Doc. 10, at 16.) Dr. Iuliano began treating Plaintiff in June 2016 for a broken back, after she was involved in a horseback riding accident. (Doc. 6, at 1566.) Plaintiff remained under Dr. Iuliano's care after she was discharged from the hospital on July 19, 2016. (Doc. 6, at 1566.) On September 1, 2016, Dr. Iuliano opined that Plaintiff is "unable to work due to her injuries for an undetermined amount of time for her healing process." (Doc. 6, at 1566.)

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting Dr. Iuliano's opinion as to her ability to work. Plaintiff maintains that

Dr. Iuliano's opinion is uncontroverted and the medical records concerning her broken back and surgery support Dr. Iuliano's opinion. Plaintiff also argues the ALJ erred in making a finding as to the time period Dr. Iuliano's opinion was intended to cover.

a.    *Specific and Legitimate Reasons*

The Court finds the ALJ correctly noted that Dr. Iuliano's opinion was inconsistent with subsequent medical records. The ALJ was therefore only required to provide specific and legitimate reasons for discounting Dr. Iuliano's opinion. In doing so, the ALJ noted that the medical records did not support interpreting Dr. Iuliano's opinion as finding the claimant perpetually unable to work following her back surgery. (Doc. 6, at 27.)

For example, the ALJ discussed Dr. Stevick's September 30, 2016 medical opinion which contradicted Dr. Iuliano's opinion and found Plaintiff was able to perform work with exertional limitations following her back injury. (Doc. 6, at 114-35.) "Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The medical records following Plaintiff's surgery also indicate that Plaintiff's condition post-surgery improved over time. (Doc. 6, at 1588, 1603,

11

1800.)

On July 16, 2016, Dr. Iuliano noted Plaintiff was stable but still had

"significant symptoms." (Doc. 6, at 1574.) However, on August 4, 2016, Plaintiff

returned to Dr. Iuliano for a post-operative follow up where Dr. Iuliano noted "at

this point, [Plaintiff] has residual symptoms." (Doc. 6, at 1588.) On September 1,

2016, Dr. Iuliano also noted Plaintiff's residual symptoms and he signed a disabled

parking application with temporary privileges. (Doc. 6, at 1608.) To the extent

Plaintiff argues the ALJ should have considered the disabled parking permit as

support for Dr. Iuliano's opinion that Plaintiff is unable to work, the Court notes

"[i]t is axiomatic that a finding of entitlement to a handicap placard is not

equivalent to a finding of disability for purposes of the Social Security Act."

*Delahoussaye v. Berryhill*, 2019 WL 1040875, * 4 (Mar. 5, 2019 E.D. Cal.) (citing

*Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

Additionally, the ALJ considered Dr. Iuliano's opinion and gave it "partial

weight." (Doc. 6, at 27). In doing so, the ALJ found it "logical to find the claimant

was unable to work immediately following her lumbar fusion, [but] the

continuation of this assessment for an undetermined time is not accepted[.]" (Doc.

6, at 27.) Because Dr. Iuliano reported Plaintiff was under his care for a broken

back and status post lumbar fusion surgery, the ALJ found that his opinion did not

12

appear to be intended "as a standing assessment of the claimant's residual functional capacity." (Doc. 6, at 27.) Consistent with Dr. Iuliano's opinion, the ALJ included exertional restrictions in Plaintiff's residual functional capacity, such as limiting her to "light work" where she can "occasionally climb ramps/stairs, balance, bend, squat, kneel, and crouch, but she can never crawl or climb ladders, ropes and scaffolds [and] . . . is restricted to occasional use of her bilateral upper extremities for overhead reaching[.]" (Doc. 6, at 20.)

The Court also notes that Dr. Iuliano's opinion is "not rendered in the customary form, often a check-box template or a narrative explanation which purports to provide a wide-ranging assessment of claimant's abilities and limitations in light of her diagnoses." *Henderson v. Berryhill*, 342 F.Supp.3d 396, 401 (W.D. N.Y. 2018). Instead, the opinion is a brief statement that Plaintiff cannot work until the healing process from her fusion surgery is complete. Such a cursory notation "is not, and does not purport to be, an assessment of [Plaintiff's] permanent work-related limitations." *Henderson*, 342 F.Supp.3d at 401. *See also*, *Batson*, 359 F.3d at 1195 (explaining that an ALJ need not accept a treating physician's opinion "if that opinion is brief, conclusory, and inadequately supported by clinical findings").

Finally, Plaintiff argues the ALJ should have developed the record to

determine the length of time Dr. Iuliano intended his opinion to cover. But it is the claimant's burden to produce evidence supporting her claim for disability. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). An ALJ is only required to develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60. As discussed, the ALJ relied on subsequent medical records and Dr. Iuliano's notes to attribute weight to his opinion. Further, simply because Dr. Iuliano's opinion is tenuous does not mean it suffers from ambiguity. An ALJ has broad discretion to determine whether an ambiguity exists that requires resolution. *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). In light of the evidence the ALJ considered, it was reasonable for the ALJ to evaluate the evidence as it appeared in the record.

Overall, the record supports the ALJ's interpretation that Plaintiff was under Dr. Iuliano's care only for post-operative assessment and rehabilitation, and that Plaintiff improved during her treatment relationship with Dr. Iuliano. Further, as the ALJ's decision reflects, he gave partial weight to Dr. Iuliano's opinion to the extent he indicated that Plaintiff was unable to work due to her back injuries and the healing time required to abate them.

/ / /

**B.      The ALJ's Credibility Determination**

Plaintiff argues the ALJ's credibility determination was erroneous because the ALJ failed to provide sufficiently clear and convincing reasons for discounting her subjective testimony as to the severity of her symptoms.   (Doc. 10, at 20.)

The credibility of a claimant's subjective symptom testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Vasquez*, 572 F.3d at 591. If the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms only by providing "specific, clear and convincing reasons" for doing so. *Vasquez*, 572 F.3d at 591.

Here, the first step of the credibility analysis is not in issue. The ALJ properly determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, and there is no argument the Plaintiff is malingering. (Doc. 6, at 22.) Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her symptoms.

At the hearing, Plaintiff testified that she was unable to perform the duties associated with her past employment because of her physical and cognitive impairments. She explained that she fell behind at work because of her fibromyalgia, anxiety, and depression. (Doc. 6, at 46.) Plaintiff also testified that she continued working after her alleged onset date because she had recently left a long-term relationship and had to support herself financially. (Doc. 6, at 45-46.)

As to her symptoms, Plaintiff testified that her fibromyalgia negatively impacts her memory and sleep. (Doc. 6, at 51.) She further testified that her pressure points are sensitive, and her nerve endings are "close," "like a frayed rope." (Doc. 6, at 51.) Plaintiff also stated that she experiences "lots of energy fatigue" due to her fibromyalgia. (Doc. 6, at 51.) Regarding her back pain, Plaintiff testified that she has "very high stress because with this back pain I can't pay my bills." (Doc. 6, at 53.) She described her back pain as "sharp, stabbing, electric, like, pain that goes, like a frayed rope. It's so intense." (Doc. 6, at 64.) Plaintiff further testified that her symptoms include being unable to turn over in her bed and having to "grab something and physically pull [herself] over from the pain." (Doc. 6, at 55.)

Plaintiff testified as to the treatment she has received for her physical ailments. She explained that she has seen a physical therapist, received cortisone

16

shots, and visits a physiatrist. (Doc. 6, at 55.) Plaintiff also testified that on good days she can walk for 20 minutes and sit for 30 minutes. She can also carry her nine-pound dog, but with difficulty. (Doc. 6, at 56, 60.)

As to her cognitive impairments, Plaintiff explained that she has ADHD and is "compulsive" about many things. (Doc. 6, at 57.) She stated she is unable to focus and lost her previous jobs due to concentration issues. (Doc. 6, at 57.) She also stated that she often forgets her appointments unless she receives reminder calls. (Doc. 6, at 59.)

The ALJ discounted Plaintiff's testimony as to the severity of her symptoms because he found that although limitations exist due to Plaintiff's impairments, the limitations are not disabling. (Doc. 6, at 23.) The reasons provided by the ALJ are sufficient to sustain his rejection of Plaintiff's subjective testimony.

The ALJ found that Plaintiff's alleged functional level was inconsistent with the medical records for several reasons. In particular, the ALJ noted that in April 2016 Plaintiff reported she could function well enough to perform light chores, run errands, and work 30 hours per week. (Doc. 6, at 23.) The ALJ also pointed to medical reports finding claimant's mental health unindicative of concentration issues severe enough to cause her to continue losing jobs. (Doc. 6, at 23.) These reports include a mental evaluation completed by Dr. Anderson in May 2016.

17

(Doc. 6, at 588-91.) The ALJ specifically noted Dr. Anderson's finding that although Plaintiff appeared somewhat anxious, she was "well groomed . . . appropriately dressed . . . [and] her affect and mood were overall euthymic in nature." (Doc. 6, at 24.) The ALJ also pointed to Dr. Anderson's finding that Plaintiff was able to "remember 2 out of 3 objects after five minutes," and although Plaintiff was "unable to perform serial 7s, she could spell "world" both forward and backward, as well as follow a simple three-step command." (Doc. 6, at 24, 588-91.) The ALJ further noted that Plaintiff reported to Dr. Anderson that she was feeling better and finding her counseling and medications for anxiety, depression, and ADD to be helpful. (Doc. 6, at 23, 588.)

With respect to Plaintiff's physical symptoms, the ALJ cited medical records that he found unsupportive of Plaintiff's claim of disability. (Doc. 6, at 24, 583-86.) First, the ALJ pointed to records detailing Plaintiff's ability to walk, remove her shoes, and get on and off the examination table unassisted. (Doc. 6, at 24, 583-86.) Plaintiff was also observed as having 5/5 muscle tone in her bilateral upper extremities, a normal gait, an unremarkable tandem gait, the ability to walk on her heels and toes normally, the ability to squat without assistance, and the ability to grasp and manipulate large and small objects. (Doc. 6, at 24, 583-86.) Next, the ALJ identified objective findings in the x-ray reports following Plaintiff's back

surgery which found stability in Plaintiff's lumbar spine. Specifically, the ALJ noted the x-ray findings of "stable laminectomy at L5 and partial laminectomy and L4 . . . stable posterior spinal fixation . . . and stable appearance of postoperative changes in the L4-S1 region." (Doc. 6, at 23, 1774,1778.)

Ultimately, the Court finds that the ALJ reasonably explained how the medical records and Plaintiff's activities contradicted her testimony. The ALJ found Plaintiff's testimony regarding the severity, persistence, and limiting effects of her symptoms were "not entirely consistent," and he cited specific evidence in the record which he interpreted to contradict Plaintiff's testimony. Although this Court may not evaluate the evidence in the same way as the ALJ, the Court may not substitute its own interpretation of the evidence for the ALJ's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th. Cir. 2002). Therefore, the Court finds that the ALJ's credibility finding is properly supported by specific, clear and convincing reasons.

### C.    Vocational Expert

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of a particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747,

19

756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

Plaintiff argues the ALJ's residual functional capacity finding and the resulting hypothetical question were incomplete, and the vocational expert's testimony consequently cannot be relied upon to deny benefits. Had the ALJ included the limitations in Dr. Iuliano's opinion, Plaintiff argues the vocational expert would have found her to be precluded from any substantial gainful employment.

As discussed above, the Court has determined the ALJ properly weighed the medical evidence from Dr. Iuliano's treatment of Plaintiff, and adequately supported his reasons for discounting Plaintiff's testimony. Having done so, the ALJ found that Plaintiff could perform light work and the vocational expert identified three jobs a person with the Plaintiff's age, education, work experience, and RFC would be able to perform. The vocational expert also testified that even if the RFC included a restriction to sedentary work, there were still jobs in the national economy a person with Plaintiff's characteristics could perform.

Further, the ALJ adequately accounted for Plaintiff's back symptoms and

limitations by incorporating exertional limitations into the residual functional capacity assessment. For example, the ALJ found Plaintiff could only "occasionally stoop, bend, squat, kneel, and crouch," could never crawl or climb ladders, and "is restricted to occasional use of her bilateral upper extremities for overhead reaching." (Doc. 6, at 20.) The ALJ also limited Plaintiff's exertional abilities by finding she could not "be exposed to heavy vibrations or to hazards." (Doc. 6, at 20.)

Accordingly, the Court finds the hypotheticals the ALJ relied on properly accounted for all of Plaintiff's limitations that the ALJ found credible and supported by evidence in the record. *See Magallanes*, 881 F.2d at 756 (the ALJ need not include limitations not supported by substantial evidence). Therefore, the Court finds the ALJ's determination at step five is supported by substantial evidence.

## IV.    <u>Conclusion</u>

Based on the foregoing, the Court finds the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly, **IT IS RECOMMENDED** that the Commissioner's decision denying Plaintiff's claims for disability insurance benefits and supplemental security income benefits should be **AFFIRMED**, and Plaintiff's motion for summary judgment be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.   The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 13th day of December, 2019

Kathleen L. DeSoto
United States Magistrate Judge